UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HAROLD LOUIS WOLF,

      Petitioner,

v.                                                            Case No.  8:06-cv-1929-T-24MAP

SECRETARY, DEPARTMENT OF CORRECTIONS,

      Respondent.

_____

**ORDER**

Harold Louis Wolf, through counsel, petitions for a 28 U.S.C. § 2254 petition for writ of habeas corpus. (Doc. No. 1).  Wolf challenges his conviction and sentence entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida.  Respondent filed a response (Doc. No. 9) and Wolf filed a reply to the response. (Doc. No. 12).   A review of the record demonstrates that, for the following reasons, Wolf's petition must be **denied.**

PROCEDURAL HISTORY

Wolf was charged by information in case 00-8093 with attempted first degree murder of Michael Robie (Count I): attempted first degree murder of Ana Arrambide (Count II); attempted robbery (Count III); kidnaping (Count IV); and armed burglary of a structure (Count V). (Exhibit 1, Record on Direct Appeal, V. 1: R. 11-18). Wolf was tried by a jury and, on February 19, 2002, found guilty as charged on Counts I, III, and V. The jury found Wolf guilty of the lesser charges of attempted second degree murder on Count II, and false imprisonment on Count IV. (Exhibit 1, Record on Direct Appeal,

V. 1: R. 113-118). On that same day, the state trial court sentenced Wolf to life in prison on count one.[1] The state trial court further sentenced Wolf as follows:

> As to counts two and three, it will be 30 years in the Florida State Prison count two being a 10 year minimum mandatory to run concurrently with that life sentence. Count four, the false imprisonment it will be five years in the Florida State Prison to run concurrent with the first three counts. Count five it will [sic] life in the Florida State Prison to run consecutive with counts one, two, three and four.

(Exhibit 1, Record on Direct Appeal, V. 1: R. 125-135; V. 4: T. 471-472).

On March 14, 2002, Wolf filed a Notice of Appeal. On June 20, 2003, the state district court of appeal per curiam affirmed Wolf's conviction and sentence. *Wolf v. State*, 856 So. 2d 1004(Fla. 2d DCA 2003)(table). The mandate issued August 12, 2003. (Exhibit 5, Mandate, Case No. 2D02- 1280).

On March 31, 2004, Wolf filed a pro se rule 3.850 motion for postconviction relief, raising eight grounds for relief. (Exhibit 6, Motion for Postconviction Relief, Case No. 2D05-1350). On September 7, 2004, the trial court summarily denied grounds 1 and 6, ordered the State to respond to grounds 2, 3, 4, 5 and 7 and reserved ruling on ground 8. (Exhibit 7, Order Denying, in Part, Motion for Postconviction Relief Pursuant to Fla. R. Crim. P. 3.850 and Order to Respond). An evidentiary hearing was held on February 28, 2004. (Exhibit 8, Transcript of February 28, 2005 Evidentiary Hearing). On March 28, 2005, the state trial court denied grounds 2, 3, 7, and 8 of the rule 3.850 motion for postconviction relief and dismissed ground 4. (Exhibit 9, Order Denying

---

[1] This life sentence ran consecutive to Wolf's two concurrent life sentences imposed in 2001 in case number 00-8098. In case 00-8098, Wolf was found guilty of first degree murder and one count of robbery with a firearm. (See document number 14 in this Court's case number 8:06-cv-1931-T-24TBM).

Grounds 2, 3, 7, and 8 of Motion for Postconviction Relief Pursuant to Fla. R. Crim. P. 3.850 and Dismissing Ground 4).

Wolf appealed the denial of postconviction relief. On May 19, 2006, the state district court of appeal per curiam affirmed the denial of postconviction relief. *Wolf v. State*, 929 So.2d 1068 (Fla. 2d DCA 2006). (Exhibit 13, PCA opinion Case No. 2D05-1350). The mandate issued June 9, 2006. (Exhibit 14, Second District Court of Appeal Docket Case No. 2D05-1350).

Meanwhile, on April 30, 2004, Wolf had filed a Petition Alleging Ineffective Assistance of Appellate Counsel. (Exhibit 15, Petition for Ineffective Assistance of Appellate Counsel, Case No. 2D04-1690). On October 19, 2004, the state district court of appeal denied the petition. *Wolf v. State*, 887 So.2d 347 (Fla 2d DCA 2004). (Exhibit 17, Order Denying Petition Alleging Ineffective Assistance of Appellate Counsel, Case No. 2D04-1690).

Wolf timely filed the present federal petition for writ of habeas corpus on October 18, 2006, raising three grounds for relief.

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent.

*Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

DISCUSSION

Ground One

Wolf alleges his Sixth Amendment right to effective assistance of counsel was violated because trial counsel failed to move the state trial court to reconsider the denial of a pretrial motion to suppress statements filed in separate, but related cases 00-8098 and 00-8093. Testimony adduced for the first time during the earlier trial in case 00-8098 directly contradicted the evidence upon which the trial court based its orders denying suppression. Wolf claims he was prejudiced by trial counsel's deficient performance because there was a reasonable probability that, but for counsel's failure to seek reconsideration of the motion to suppress the two statements, the trial court would have suppressed the statements/confessions on Fourth Amendment Grounds

and the jury would have acquitted Wolf; or the trial court would have granted a judgment of acquittal, as there would have been insufficient evidence linking Wolf to the crimes with which he was charged.

Wolf raised this same issue in ground one of his rule 3.850 motion, and the state trial court denied relief. Wolf appealed, alleging that the state trial court erred in summarily denying this claim without conducting an evidentiary hearing. It is true that:

> A defendant is entitled to an evidentiary hearing on a postconviction relief motion unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is legally insufficient. The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden. However, in cases where there has been no evidentiary hearing, we must accept the factual allegations made by the defendant to the extent that they are not refuted by the record. We must examine each claim to determine if it is legally sufficient, and, if so, determine whether or not the claim is refuted by the record.

*Freeman v. State*, 761 So.2d 1055, 1061 (Fla. 2000).

Under *Freeman,* Wolf has not demonstrated any basis for relief because his claims were refuted by the record. The state trial court correctly determined:

> it is not appropriate to use different argument to relitigate an issue that was raised on direct appeal. *Medina v. State*, 573 So.2d 293 (Fla. 1990). Furthermore, postconviction proceedings are not to be used as a second appeal. *Doyle v. State*, 526 So.2d 909 (Fla. 1998).
>
> Defendant raised this issue on direct appeal of lower case 00-8098,[1] and is now attempting to relitigate the issue in his postconviction motion under the guise of ineffective assistance of counsel.
>
> > [1] The Motions to Suppress were filed on both lower court cases 00-08903 and 00-08098. (See Order Denying Motions To Suppress and Granting Motion To Sever, attached).

(Exhibit 7, Order Denying, in Part, Motion for Postconviction Relief and Order to Respond, pp. 7-8). Furthermore, the order of the state trial court denying the motion to suppress reveals that the state trial court specifically found that Wolf was not in custody or under arrest at the time he first confessed:

> As to the Defendant's assertions that he was in custody prior to the interview, the Court finds that the Defendant was not in custody or under arrest at the time he exited the residence to be interviewed by the officers. The Defendant was not restrained, no weapons were pointed at the Defendant, and Detective Hurley even left the Defendant alone and walked thirty to forty feet away from him during the interview. The Defendant voluntarily accompanied the officers to the front of the house and was free to come and go. The Court finds that these facts do not establish that the defendant was in custody at the time of the interview.
>
> The Court further finds that the Defendant was read his *Miranda* rights by Detective Hurley prior to questioning outside the Defendant's residence. The Defendant signed a consent to be interviewed form indicating that he knew his rights and consented to be interviewed. As such, the Defendant was aware of his Miranda rights prior to the interview and prior to making his statements.

(Exhibit 1, Record on Direct Appeal, V. I: R38-9).

Any attempt to reargue the motion due to allegedly changed testimony would have been futile. The trial court had determined that Wolf was not in custody and was not under arrest at the time of his first post-*Miranda* statements. The state trial court's factual determinations are accorded a presumption of correctness when they are fairly supported by the record. *Sumner v. Mata*, 449 U.S. 539 (1981). Here, the officers did not demand that Wolf exit the house; there was no show of weapons; Wolf was left alone in the driveway while officers walked away; Wolf was read his *Miranda* rights before questioning. In addition, Wolf signed a *Miranda* waiver before questioning. Counsel cannot be ineffective for failing to raise a non-meritorious issue.

Even if the Court assumed that Wolf was arrested in his home in violation of *Payton v. New York*, 445 U.S. 573 (1980),[2] Wolf's argument still fails. The United States Supreme Court held, in *New York v. Harris*, 495 U.S. 14 (1990) that "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant <u>outside of his home</u>, even though the statement is taken after an arrest made in violation of *Payton*." 495 U.S. at 21 (emphasis added).

Trial counsel cannot be deemed ineffective for failing to reargue the suppression motion. Even if he had reargued the motion on the alleged new facts, trial counsel would not have prevailed.

Moreover, any conceivable error in failing to suppress Wolf's initial statement at his residence was harmless. Wolf was initially given his *Miranda* rights at his residence prior to being questioned. He further signed a consent-to-be-interviewed form. At the police station, Wolf later indicated he understood the *Miranda* rights previously explained to him. Even if the initial statement at the residence should have been suppressed, the confession at the police station "was sufficiently an act of free will to purge the primary taint of the unlawful invasion." *Brown v. Illinois*, 422 U.S. 590, 597 (1975). *See also Voorhees v. State*, 699 So. 2d 602, 611 (Fla. 1997).

Under the circumstances, Wolf cannot establish prejudice under *Strickland* because he cannot show that there was a reasonable probability that, but for trial

---

[2] *Payton* prohibits the warrantless and nonconsensual entry into a suspect's home to make a felony arrest; the purpose of the *Payton* rule is to protect the home by requiring exclusion of any incriminating evidence gathered by the police from the home.

counsel's alleged ineffectiveness in not moving the state trial court to reconsider the denial of the motion to suppress, the "result of the proceeding would have been different." Wolf is not entitled to habeas corpus relief on ground one.

Ground Two

Wolf alleges that his "Sixth Amendment right to effective assistance of counsel was violated when defense counsel failed to properly argue Florida law to suppress Wolf's second, police station statement on the grounds that the police did not reveal to Wolf that his attorney had requested to speak to him until Wolf had nearly completed his incriminating taped statement."

Wolf raised this issue in his rule 3.850 motion as ground 1. The state trial court denied this claim, finding:

> After reviewing ground 1, the court file, and the record, the Court finds that Defendant's counsel adequately raised and argued the pertinent points of law and presented the Court with pertinent facts regarding police allegedly withholding from Defendant the fact that an attorney had been retained and was trying to contact him to advise him. (See July 25, 2001 Transcript, August 8, 2001 Transcript, attached). The Court further finds that counsel argued the case *Haliburton v. State*, 514 So.2d 1088 (Fla. 1987) to the Court. (See August 8, 2001, Transcript, page 25 attached). Moreover, with respect to Officer Forbes, this Court finds that by Defendant's own admission, at the suppression hearing, counsel introduced the memo Officer Forbes wrote concerning the time counsel called to support his claims that counsel called at 6:28 a.m. (See Motion for Postconviction Relief Pursuant to Fla. R. Crim. P. 3.850, page 2, attached). Consequently, this Court finds that Defendant has failed to meet the first prong of *Strickland* in that he has failed to prove how counsel acted deficiently in failing to accurately present pertinent facts and argue the appropriate law. Since Defendant failed to meet the first prong of *Strickland,* it is unnecessary to address the prejudice component. *See Downs v. State*, 740 So.2d 518 n.19 (Fla. 1999). As such, no relief is warranted on ground 1.

(Exhibit 7, Order Denying, in Part, Motion for Postconviction Relief Pursuant to Fla. R. Crim. P. 3.850 and Order to Respond, pp. 3-4.).

Wolf's claim that Florida law requires suppression of any statement made while an attorney is attempting to communicate with a client being held in custody at a police station is erroneous. Wolf relies on *Haliburton v. State,* 514 So.2d 1088 (Fla. 1987). In *Haliburton,* the Court found [that the defendant]:

> was not told of the attorney's presence or request. The police refused access even in the face of a circuit court judge's telephonic order that the attorney be allowed to see the suspect. Only after a second telephone call from the judge was the attorney allowed to see his client. We find that this conduct violates the due process provision of article I, section 9 of the Florida Constitution.

*Id.* at 1090.

Wolf's case is factually distinguishable from *Haliburton* because, in Wolf's case, the interview was terminated as soon as the officer interviewing Wolf learned that an attorney was trying to contact Wolf.

In *Smith v. State*, 699 So. 2d 629, 639 (Fla. 1997), the defendant moved to suppress his confession obtained after an assistant public defender had volunteered and been appointed to represent him. The *Smith* Court found that "the mere appointment of an attorney at the attorney's request is not enough to invoke the right [to counsel]; the accused must invoke the right." The *Smith* Court distinguished *Haliburton* as follows:

> We further reject Smith's claim that our decision in *Haliburton v. State,* 514 So. 2d 1088 (Fla. 1987), requires a different result. In *Haliburton*, we held that the defendant's due process rights under article I, section 9 of the Florida Constitution were violated when: police denied an attorney, who was retained by the defendant's sister without the defendant's knowledge, access to the defendant; and police did not notify the

> defendant of the attorney's presence or request. *Id.* at 1090. We distinguish *Haliburton* on two bases. First, *Haliburton* did not confront the question of waiver under the Sixth Amendment. Second, we find that the offensive police misconduct which compelled the decision in *Haliburton* was not present in this case. Rather, we find this case similar to *Harvey v. State*, 529 So. 2d 1083, 1085 (Fla. 1988), in which we found no due process violation when police denied a public defender access to the defendant when the public defender voluntarily went to the jail after hearing about the defendant's arrest to see if the defendant needed a lawyer.
>
> We recognize that an accused invokes the right to counsel by statements that indicate a desire to deal with police only through counsel. *See Doyle v. State*, 526 So. 2d 909, 911 (Fla. 1988). However, this objective inquiry requires the accused to make some positive statement or take other action that informs a reasonable person of the accused's desire. *Cf. Davis v. United States*, 512 U.S. 452, 460-62, 129 L. Ed. 2d 362, 114 S. Ct. 2350 (1994) (after knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless suspect clearly requests attorney). On this basis, we distinguish *Phillips v. State*, 612 So. 2d 557 (Fla. 1992), in which the public defender was appointed to represent the defendant at a first appearance which was held after Phillips had been arrested and at which Phillips physically appeared. In that case, we held that the defendant's right to counsel had attached and was invoked. *Id.* at 559. This is in contrast to the events which occurred in this case, in which Smith did not appear when counsel was summarily appointed and did not invoke or accept the appointment of counsel.

*Smith*, 699 So. 2d at 638.

Furthermore, there was no evidence of police misconduct or deception in Wolf's case, and Wolf's due process rights were not violated. See *State v. Allen*, 548 So.2d 762 (Fla. 1st DCA 1989),

The facts of the instant case are that Wolf confessed after he waived his *Miranda* rights. He confessed twice, once while being questioned outside his home and again on tape at the police station. His attorney called during his taped interview at the police station. That interview was terminated as soon as the detective learned that

Wolf's attorney had called. Under Fla. Const. art. I, § 16(a), Wolf effectively waived his right to counsel before he confessed to murder where he was told of his *Miranda* rights and did not invoke his right to counsel.

Trial counsel argued Florida law to the state trial court, and the state trial court did not err in summarily denying Wolf's claim that counsel was ineffective for failing to argue Florida law. Likewise, the state district court of appeal did not err in affirming the state trial court's denial of relief on this claim.

The record demonstrates that Wolf is not entitled to habeas corpus relief on ground two. Wolf failed to establish deficiency or prejudice under *Strickland*.

## Ground Three

Wolf alleges that appellate counsel was ineffective for failing to argue on direct appeal that the trial court committed reversible error in: (1) not excluding Wolf's statements on Fourth Amendment grounds once police officers testified at trial that they entered Wolf's home without a warrant; and (2) admitting Wolf's taped police station statement in violation of Florida law, even though Wolf's attorney called during the interview in an attempt to speak to Wolf.

Wolf's claim is without merit. The state trial court's ruling on the motion to suppress was entitled to a presumption of correctness, *Murray v. State*, 692 So.2d 157 (Fla. 1997), *A.J.M. v. State*, 746 So.2d 1222 (Fla. 3d DCA 1999), and the state district court of appeal was required to interpret evidence and the reasonable inferences derived therefrom in the manner most favorable to the trial court. *Freeman v. State*, 559 So. 2d 295 (Fla. 1st DCA 1990); *State v. Bravo*, 565 So. 2d 857 (Fla. 2d DCA 1990). "A reviewing court must accept the trial court's findings of fact in an order on a

motion to suppress, provided those findings are supported by the record." *Ikner v. State*, 756 So.2d 1116, 1117 (Fla. 1st DCA 2000)(citations omitted). Further, the state district court of appeal was "required to accept the trial court's determination of disputed issues of fact in a motion to suppress, as the trial court is vested with the authority to determine credibility of the witnesses and the weight of the evidence." *Curtis v. State*, 748 So.2d 370, 371 (Fla. 4th DCA 2000).

In the written order denying the motion to suppress, the state trial court made the following findings:

> With regard to the Defendant's assertions that the officers entered the house and barged in and ordered, or commanded him outside for questioning, the Court finds this did not occur. The Court specifically finds that the police officers did not enter the residence when they first approached, and they never commanded the Defendant to accompany them outside. The Defendant offered the testimony of his brother, father, and father's girlfriend to support this. The Court finds that their testimony lacks credibility and is unreliable. The Court finds that the officers requested that the Defendant accompany them outside for an interview and that the Defendant voluntarily agreed to accompany them.
>
> As to the Defendant's assertions that he was in custody prior to the interview, the Court finds that the Defendant was not in custody or under arrest at the time he exited the residence to be interviewed by the officers. The Defendant was not restrained, no weapons were pointed at the Defendant, and Detective Hurley even left the Defendant alone and walked thirty to forty feet away from him during the interview. The Defendant voluntarily accompanied the officers to the front of the house and was free to come and go. The Court finds that these facts do not establish that the defendant was in custody at the time of the interview.
>
> The Court further finds that the Defendant was read his *Miranda* rights by Detective Hurley prior to questioning outside the Defendant's residence. The Defendant signed a consent to be interviewed form indicating that he knew his rights and consented to be interviewed. As such, the Defendant was aware of his *Miranda* rights prior to the interview and prior to making his statements.

(Exhibit 1, Order Denying Motion To Suppress and Granting Motion To Sever, R38).

The state trial court specifically found that the defense witnesses lacked credibility and that their testimony was unreliable. The state district court of appeal was required to accept this determination. Had appellate counsel argued that the order denying the motion to suppress should be reversed on the ground that the defense witnesses at the suppression hearing were more credible than the State police witnesses, the argument would have been without merit.

Furthermore, the officers did not demand that Wolf exit the house; there was no show of weapons; Wolf was left alone in the driveway while officers walked away; Wolf was read his *Miranda* rights before questioning and he signed a waiver. Even if the Court assumed Wolf was arrested in his home in violation of *Payton v. New York*, 445 U.S. 573, (1980), Wolf's argument that his Fourth Amendment rights were violated would fail.

In *New York v. Harris*, 495 U.S. 14 (1990), the Court held "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in violation of *Payton*." Even if appellate counsel had raised this issue on appeal, Wolf would not have prevailed. Appellate counsel cannot be deemed ineffective for failing to raise non-meritorious claims on appeal. *Rutherford v. Moore*, 774 So. 2d 637, 643 (Fla. 2000).

However, even assuming appellate counsel was deficient in failing to raise this issue on appeal, Wolf cannot satisfy the *Strickland prejudice* prong. Wolf had already confessed to the crime prior to being taken to the police station and interviewed on tape and prior to the attorney's contacting the police station. Moreover, Wolf was

identified as the perpetrator by an eyewitness. Victim Mike Robie testified that two perpetrators came into the pizza restaurant. He identified Wolf as one of the two perpetrators. Wolf demanded money. Wolf shot Robie seven or more times. (Exhibit 1, V. 3: T. 144-146). The other perpetrator then went to Robie as Robie lay on the floor and shot Robie two times. (Exhibit 1, V. 3: T. 147). The perpetrators were also videotaped by the video surveillance of the pizza restaurant.

In light of Robie's eyewitness identification of Wolf, any alleged error in admitting Wolf's taped confession was harmless error. Wolf's argument that appellate counsel was ineffective for failing to argue that the admission of his taped confession at trial was state trial court error fails for the same reason that his argument that trial counsel was ineffective for failing to argue that the confessions and the tape should not have been admitted at trial fails. (See Ground Two above).

**Accordingly, the Court orders:**

That Wolf's petition is denied. The Clerk is directed to enter judgment against Wolf and to close this case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on March 10, 2008.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Counsel of Record